**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, Plaintiff,**

v.

**VILLAGE OF MILAN, a Municipal Corporation, Defendant.**

**Civ. A. No. P–2156.**

United States District Court
S. D. Illinois, N. D.

Aug. 6, 1959.

Victor E. Walker, Rock Island, Ill., for plaintiff.

Isador I. Katz, Reidy, Katz, McAndrews, Durkee & Telleen, Rock Island, Ill., for defendant.

MERCER, Chief Judge.

Plaintiff, Hartford, filed its complaint against defendant, Village of Milan, claiming a sum of money allegedly due to plaintiff from defendant. Defendant filed a disjointed document which it entitled as an answer and counterclaim, a principal feature of which is thirteen single paragraphs, each of which is designated as a separate affirmative defense. It is logically debatable whether defendant, in its efforts, actually answered the complaint filed but for present purposes the court will assume that it has done so.

The cause is now before the court for decision of two matters, viz., plaintiff's motion to strike the First, Second, Eighth, Ninth, Eleventh and Twelfth af-

firmative defenses and plaintiff's objections to certain of the interrogatories propounded by defendant.

The pertinent background of this litigation as shown by the pleadings is the following. On August 23, 1954, defendant entered into a contract with Frederick N. Frank, Inc., hereinafter referred to as contractor, whereby contractor undertook to construct certain water and sewer improvements for defendant. Prior to execution of that contract, plaintiff, upon contractor's application, issued a performance bond in favor of the defendant conditioned for the faithful performance by contractor of the construction contract. Contractor's application for the bond contained, inter alia, a provision assigning to plaintiff all moneys which should become due to contractor from defendant from time to time under the contract. On December 8, 1954, plaintiff, invoking the general assignment contained in contractor's bond application, gave defendant written notice that it should make no further payments to contractor except such as might be authorized by plaintiff through its home office or its designated Chicago agent. On December 22, 1954, defendant paid to contractor the sum of $19,275.40 as a progress payment under the construction contract. On February 4, 1955, defendant terminated the construction contract because of the alleged default of contract. Thereafter, on October 3, 1955, plaintiff and defendant entered into an agreement which provided that defendant would employ a new contractor to complete the construction work and plaintiff would pay to defendant such sums as defendant might be required to expend for completion of the construction over and above the original contract price for the work. The latter contract provided, inter alia, an established formula for determination of amounts to be paid by plaintiff for completion of the work and a stipulation that plaintiff reserved all rights which it might have against defendant arising out of the December 22, 1954 progress payment to contractor. Thereafter, on October 24,

1955, plaintiff paid to defendant the sum of $69,558.85, pursuant to the provisions of the October 3d contract.

Plaintiff contends that defendant is liable to it for the sum paid to contractor on December 22, 1954, after defendant's receipt of notice of plaintiff's claim as assignee of contractor. The complaint prays judgment against defendant in the amount of $19,275.40, plus accrued interest.

■ A principal question presented by plaintiff's motion to strike, namely, whether the alleged assignment to plaintiff of funds due to contractor is valid against defendant, controls disposition of that motion as to the First and Second defenses and bears some relationship to other challenged defenses. The construction contract provided that neither the contract nor any part thereof could be assigned by contractor without the written consent of defendant. Defendant pleads that provision as its First defense, contending that the purported assignment to plaintiff is void and of no effect. In its related second defense, defendant contends that the construction contract must be considered as an inseparable contract and that no part thereof was assignable without defendant's written consent.

I am of the opinion that neither the First nor Second defenses constitute a defense to plaintiff's claim. We are not here confronted with an attempted assignment of the contract itself which would collide squarely with the prohibition against assignment. What we are concerned with is an assignment of moneys due or to become due to contractor thereunder.

The assignment of moneys due, or to become due, under a public works contract does not violate a provision that the contract is not assignable without the consent of the public body. Portuguese-American Bank v. Welles, 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116; 63 C.J.S. Municipal Corporations § 1015; 4 Am. Jur., Assignments, Sec. 14; 43 Am.Jur., Pub. Works & Contracts, Sec. 22. The

latter authority states the principle in pertinent part, as follows:

" * * * unless restricted by statute or by his contract, a contractor for public works may assign moneys due or to become due him in the performance of the work, particularly when he does so as a means of financing the undertaking and paying for labor and materials, provided such assignment does not involve any of the obligations to perform the work and the public body retains the personal obligations of the contractor and his sureties for the faithful performance of the contract, for it is generally recognized that the right to receive money due or to become due under a contract may be assigned even though the contract itself is not assignable. Statutory provisions and ordinances prohibiting assignments without the consent of public authorities are generally construed to refer to the contract itself and not to the proceeds thereof, unless an intention to forbid the assignment of proceeds is clearly manifest." 43 Am.Jur., at pp. 763–4.

In Portuguese-American Bank v. Welles, 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116, the Court rejected the contention that an assignment of one of several progress payments under a public works contract was void because a contract clause prohibited assignment of the contract without written consent of the municipality. In so holding, the Court reasoned that a debt incurred under the contract was property in the hands of the contractor which he could alienate or deal with as he pleased so long as his action did not impair the rights of the municipality to have the work done by him in accordance with the contract provisions.

I have found no Illinois case directly in point. Illinois has approved the assignability of moneys due or to become due under public works contracts in Hibernian Banking Ass'n v. City of Chicago, 178 Ill.App. 138. It is not clear from that opinion whether or not the contract involved contained a provision prohibiting assignment. In the somewhat analogous situation, the Illinois courts have sustained the right of an employee to assign wages due and to become due from his employer notwithstanding a restrictive provision of his employment contract and notice to his assignee. State Street Furniture Co. v. Armour & Co., 345 Ill. 160, 177 N.E. 702, 76 A.L.R. 1298. State sued as assignee of the wages of an Armour employee. Armour pleaded as a defense an employment contract with the employee involved which provided that wages accrued or to accrue to the employee under the contract could not be assigned without the consent of Armour, and a notice mailed by Armour to State, among others, prior to the assignment in litigation, that any wage assignment by an Armour employee would not be honored. The defense was stricken by the trial court, and a judgment for State was affirmed. In so holding, the court said, in pertinent part:

"Where the assignment is of the entire claim, the consent of the debtor is not required, as it is no concern to the defendant in whose name the suit for wages due the employee is instituted. * * * When one has incurred a debt, which is property in the hands of the creditor, the debtor cannot restrain its alienation as between the creditor and a third person any more than he can forbid the sale or pledge of other chattels. A debt is property, which may be sold or assigned, subject to the ordinary rules of the common law in determining the rights of the assignee, and, when untainted by fraud, its sale offers no ground of complaint by the debtor. Portuguese Bank v. Welles, 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116; Bank of Harlem v. City of Bayonne, [48 N.J.Eq. 246, 21 A. 478]." 345 Ill. 165–166, 177 N.E. 702, 704.

The only fly in the otherwise clear ointment of Illinois law is the case of Mueller v. Northwestern University, 195

Ill. 236, 63 N.E. 110, involving an alleged assignment of moneys due under a public works contract. It is not too clear just which way the court jumped in that case. A part of the opinion is devoted to discussion of cases involving an attempted assignment of a contract itself, or of some part thereof, in violation of clauses prohibiting assignment. Then, adopting the general conclusion that clauses prohibitive of assignment of a public works contract would be enforced by the courts, the court assumed the validity of the assignment of moneys due, notwithstanding the prohibitory language of the contract in issue. The assignee's claim was rejected, by the court, but the rejection was predicated upon the grounds that the purported assignment was too vague to be enforced and that it was an attempted assignment of a part only of the sums due to the contractor which provided no basis upon which the public body could determine the amount of the assignee's claim. It, therefore, appears that the Mueller case rests on the common law prescription against a partial assignment of a non-negotiable chose in action without consent of the debtor, and not upon a rejection of the general rule of assignability of debts as above quoted from American Jurisprudence.

There is also one other factor present in the case at bar which must influence a decision as to the validity of the claimed assignment. Plaintiff asserts an assignment of moneys due under the contract which was given to it as a part of the consideration for the performance bond which was, in turn, a condition precedent to the very existence of the contract itself. Defendant's rights could not be prejudiced by the assignment. It did not impair the basic responsibility of contractor to perform the work or the obligation of plaintiff, as surety, to guarantee the faithful performance thereof by contractor. Plaintiff's obligation in that regard extended to the protection of defendant against liens claimed by laborers, materialmen, and subcontractors, I.R.S.1953, c. 29, § 16, and defendant's position could not have been jeopardized by the assignment on that account.

Plaintiff asserts an assignment of the whole obligation under a specific contract, the amount of which was known or could be readily ascertained by applying the contract provisions. I hold the assignment to plaintiff to be valid, and, therefore, neither the First nor Second defense constitutes a defense to plaintiff's demand.

■ Defendant's Eighth affirmative defense avers that the contractor was overpaid on December 22, 1954, in the amount of $796.42 by reason of an error in computing the amount then due as a progress payment and that the assignment, if valid, did not attach to that part of the payment. The matters there averred are a proper response to the allegations of damages claimed by plaintiff and are relevant to the determination of amount of damages should plaintiff prevail in the cause. The motion to strike this defense should be denied.

What has been said above with respect to validity of the assignment is in part pertinent to the question whether defendant's Ninth defense should be stricken. That defense avers that contractor was entitled to claim compensation only from a trust fund derived from the sale of certain specific issues of general obligation bonds of defendant; that the proceeds of such fund were payable only upon the city engineer's certification of construction actually performed; and that nothing could be paid to plaintiff because defendant had received no engineer's certification that plaintiff had performed any part of the construction work. While that contention is one of novelty it nevertheless begs the issue. In legal contemplation, amounts earned by contractor and payable to it under the contract were debts of defendant and property in the hands of contractor which it could sell, assign or dispose of as it saw fit. Paraphrasing the Illinois court in the Armour case, supra, defendant, having contracted the debt, had no concern whether payment was to be made to contractor or contractor's assignee.

The matters here alleged are based upon an erroneous assumption that the assignment was invalid and are, therefore, irrelevant to any issue in the case.

The Eleventh defense avers that payments under the contract were payable only out of a specific trust fund, not out of the general funds of defendant, and that plaintiff cannot now recover because no part of the fund remained in existence at the time this suit was filed. In that averment, defendant asserts, as a legal principle, an astounding proposition. To the extent of its December 22nd payment to contractor, defendant, rightly or wrongly, has dissipated the fund from which plaintiff, as assignee of contractor, was entitled to claim satisfaction of its demand. If that payment was wrongfully made, defendant cannot now rely upon its own wrongful dissipation of such funds to defeat a claim on the ground that, thereby, defendant exhausted the only fund out of which the claim might be paid. While it is true that plaintiff could have asserted its claim only against the special fund had its notice of assignment been honored by defendant, it may nevertheless now assert its claim against the general funds of defendant if defendant, in fact, unlawfully and indefensibly exhausted the funds in the special fund to plaintiff's prejudice. The matters averred in this defense are wholly irrelevant and immaterial to any issue in this suit.

By its Twelfth defense, defendant attempts to aver estoppel. This defense states that plaintiff, prior to issuance of the performance bond had some knowledge of the insolvency of contractor and knowledge of a claim due from contractor to the United States; that defendant relied upon plaintiff's issuance of the bond in awarding the contract to contractor; and that, therefore, an estoppel arises which defeats plaintiff's present claim. I think this defense should also be stricken. First, the defense is composed almost entirely of conclusions of the pleader; second, the only factual averments are that plaintiff knew of a claim by the United States against contractor and that defendant, although it had the right to investigate contractor's financial responsibility and reject his bid, had relied upon the issuance of the performance bond in awarding the contract; and, third, and finally, there is absent any averment of acts of plaintiff which induced defendant to relinquish its right to make its own investigation of contractor's financial condition. In its present state, the Twelfth defense is an irrelevant muddle of verbiage bearing no relationship to the issues of the case.

For the foregoing reasons plaintiff's motion to strike is allowed as to the First, Second, Ninth, Eleventh and Twelfth affirmative defenses, and is overruled as to the Eighth affirmative defense. Plaintiff is ordered to file its answer to the Eighth affirmative defense within 20 days from this date.

Plaintiff's objections to certain paragraphs of defendant's interrogatory number one will be allowed. In summary, those interrogatories seek information as follows:

1. Give names and addresses of all persons who have knowledge of, or documents relating to, the following facts:

(a) Agency relationship between plaintiff and William Buchanan and W. P. Buchanan Co., for the issuance of performance and indemnity bonds.

(b) Financial statements or other representations made by Frederick N. Frank, Inc., or its officers or agents to induce issuance of the performance bond.

(c) Dates, amounts, obligees, etc., of other performance bonds issued by plaintiff on behalf of Frederick N. Frank, Inc., in 1954 and prior years.

(d) Any indebtedness or other obligations of Frank to plaintiff or other persons for whom the assignment alleged would become security for payment or performance.

(g) Representations by Buchanan Agency or its agents to induce plaintiff to issue the performance bond.

It is obvious that those interrogatories, in large part, relate to matters sought to

be pleaded by defendant in the above-stricken defenses. In each instance, I fail to perceive any relevancy whatsoever of the facts thereby sought to any issue in this case. Accordingly, plaintiff's objections to each, interrogatories 1a, 1b, 1c, 1d and 1g, are sustained.